**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RONALD C. TATUM | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-06732 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| 10 ROADS EXPRESS, LLC; 10 ROADS | ) | |
| SOUTH, LLC; GINO PRESTIA, and JEFF | ) | |
| NATELBORG, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM ORDER AND OPINION**

Tatum filed an amended six-count amended complaint against Defendants 10 Roads

Express, LLC, 10 Roads South, LLC, Gino Prestia, and Jeff Natelborg, alleging he was improperly

discharged in violation of the Americans with Disabilities Act of 1990 ("ADA"), Title VII of the

Civil Rights Act, and the Age Discrimination in Employment Act ("ADEA") and that defendants

interfered with his right under the Family and Medical Leave Act ("FMLA") and Illinois Workers'

Compensation Act ("IWCA").   Defendants have moved to dismiss Counts I, II, and VI pursuant to

Federal Rule of Civil Procedure 12(b)(6).  For the reasons laid out below, Defendants' motion [36]

to dismiss is denied in its entirety.

**Background**

The following facts are taken as true for the purposes of this motion. Plaintiff, Ronald C.

Tatum ("Tatum"), is a 61-year-old, male Illinois resident.  Defendant, 10 Roads Express ("10

Roads"), is a foreign, limited liability company conducting business in Illinois.

Tatum began his employment with a predecessor company to 10 Roads as a truck driver in

1998.  For his 22 years of employment with 10 Roads, Tatum moved through positions eventually

serving in a managerial capacity. Prior to March 2020, Tatum had received no written disciplinary actions or performance deficiency notices. However, in March and July of 2020, Tatum received two negative employment performance notices; he contested these and informed his supervisors he believed the notices to be unfair.

Throughout 2020, Tatum began experiencing health issues and was granted leave under the Family Medical Leave Act (FMLA). Initially, Tatum did not exercise his right to leave because he was able to complete his scheduled medical procedures on scheduled days off.

On October 24, 2020, Tatum experienced more health issues when he suffered from an acute anxiety attack while at work. Tatum reported feeling strange and that he was hearing his heartbeat during the workday. While feeling strange, Tatum was called into a meeting with management. During this meeting, Tatum froze, lost his ability to focus and become confused, scared, and emotional. (Dkt. 34, ¶ 25.) He was unable to hear or answer any questions from management and ultimately chose to leave the meeting to regain some control. Management stated his act of leaving the conference would be taken as his resignation. (Dkt. 34, ¶ 26.)

At this point, Tatum was shaking and incoherent. One member of management walked him towards the stairs and instructed Tatum to hold the handrail as he descended because he was noticeably shaking. ((Dkt. 34, ¶ 27.) Management then suggested he should seek medical attention. Tatum then contacted his direct supervisor to inform him he was "tapping out" for the day to seek medical care at the emergency room. (Dkt. 34, ¶ 28.) His supervisor warned him to calm down before leaving to ensure he was fit to drive.

At the emergency room, Tatum was diagnosed with an acute anxiety attack and released that same night. He was provided with discharge paperwork instructing him to not return to work until October 27, 2020, three days after the anxiety attack. (Dkt. 34, ¶ 30 – 31.) After being released, Tatum provided 10 Roads and his supervisor with his medical paperwork and informed them he was

not quitting his position. On October 26, 2020, Tatum received an email from the 10 Roads Human Resources Director to which a letter was attached confirming his resignation on October 24, 2020. (Dkt. 34, ¶ 36.) Tatum replied to that email stating he did not quit and once again provided his emergency room documentation. Days later, Tatum received a copy of his personnel file from 10 Roads. His file included an Employee Separation Notice, signed by Tatum's supervisor, that indicated he resigned without notice on October 24, 2020.

**Discussion**

Tatum now brings this action alleging that 10 Roads interfered with his FMLA rights (Count I); retaliated against him in violation of the FMLA (Count II); discriminated against him in violation of the ADA (Count III), ADEA (Count IV), and Title VIII (Count V); and committed retaliatory discharge in violation of the IWCA (Count VI). 10 Roads moves to dismiss Counts I, II, and VI of the Amended Complaint, arguing that Tatum's FMLA claims are time barred and that Tatum failed to state plausible FMLA and IWCA claims. The Court will assess each argument in turn.

*I.     FMLA Timeliness*

10 Roads first argues that Tatum's Family and Medical Leave Act (FMLA) claims are untimely. Under FMLA, a suit must be filed no later than that two years after the date of the event constituting the alleged violation. 29 U.S.C. § 2617(c)(1). The Amended Complaint alleges the violation occurred on October 24, 2020, but the Amended Complaint was filed on October 24, 2022, one day past the statute of limitations. However, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. Rules of Civ. Pro. 15(c)(1)(B). Plaintiff's originally filed complaint was bought pro se on December 17, 2021, well within the two year statute of limitations. "[D]istrict courts have a special responsibility to construe pro se complaints." *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548,

555 (7th Cir. 1996). Tatum did raise an FMLA claim in his pro se complaint. Although he did not

fully articulate the claim, simply stating that his termination denied him a right to an FMLA claim in

the pro se complaint is enough to allow the Amended Complaint to relate back to the original

complaint. Thus, the FMLA claims are timely.

II.     *FMLA Interference Claim*

Next, 10 Roads argues that Tatum failed to make a plausible Family and Medical Leave Act

claim. The plaintiff bears the burden of proving an FLMA inference claim. *Goelzer v. Sheboygan Cnty.,*

*Wis.,* 604 F.3d 987, 993 (7th Cir. 2010). "To prevail on an FMLA interference claim, [Tatum] must

establish that: "(1) [he] was eligible for the FMLA, (2) [his] employer was covered by the FMLA, (3)

[he] was entitled to leave under the FMLA, (4) [he] provided notice of [his] intent to take leave, and

(5) [his] employer denied her FMLA benefits to which [he] was entitled." *Anderson v. Nations Lending*

*Corp.*, 27 F.4th 1300, 1304 (7th Cir. 2022) (internal citations omitted).

The Court turns first to the fourth factor, providing adequate notice of intent to take FMLA

leave. The Court finds Tatum did provide adequate notice to 10 Roads. The notice obligation is

satisfied if an employee provides enough information to show that he likely has an FMLA-qualifying

condition. *Burnett v. LFW Inc.*, 472 F.3d 471, 479 (7th Cir. 2006). "A person unable to give notice is

excused from doing so." *Byrne v. Avon Prod.*, Inc., 328 F.3d 379, 382 (7th Cir. 2003). However, when

the need for leave is not foreseeable, an employee is expected to provide an employer with formal

notice within two working days. *Id.* Evaluating the employee's adequacy of providing notice is a

fact-specific question and a bare assertion that an employee is feeling sick is insufficient. *Burnett*, 472

F.3d at 479. As Tatum alleges, he abruptly left work when he began experiencing incoherent

thoughts and was shaking. Providing notice of his need for leave was not feasible at that point

because it was not clear what was ailing him. Moreover, Tatum's supervisor was aware that he left

work to go directly to the emergency room. Finally, Tatum promptly provided 10 Roads with his

discharge paperwork that said he would be unable to return to work for three days. Thus, Tatum satisfied the notice requirement.

Turning to the fifth factor, whether Tatum was denied FMLA benefits, 10 Roads maintains Tatum was never denied benefits because he never requested to use FLMA benefits. However, notice of intent to take FMLA leave can be provided constructively. *See Stevenson v. Hyre Elec.* Co., 505 F.3d 720, 726 (7th Cir. 2007) (citing *Byrne v. Avon Products*, 328 F.3d 379 (7th Cir. 2003) (holding "that an employee's inability to communicate his illness to his employer. . . may constitute constructive notice of a serious health condition."). Because Tatum provided constructive notice to 10 Roads of his intent to take FMLA leave and was subsequently provided with notice of termination, he plausibly plead he was denied FMLA benefits.

The Court turns now to the third factor, whether Tatum plausibly claims he was entitled to leave under the FMLA. Simply providing notice to an employee is not enough to receive FMLA benefits, an employee must have a serious health condition. *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 727 (7th Cir. 2007). 10 Roads maintains Tatum did not allege he was entitled to FMLA benefits because he failed to show he suffered from a serious health condition. An employee has a "serious health condition" within the meaning of the FMLA, where he has "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *see Burnett,* 472 F.3d at 478 (7th Cir. 2006). Tatum's Amended Complaint clearly states he received treatment in the emergency room for an acute anxiety attack and was not cleared to return to work for three days. Tatum provided his medical paperwork to 10 Roads the same night he was discharged. Once he provided notice to 10 Roads of his intent to take leave, the burden shifted to 10 Roads to determine his entitlement. See *Aubuchon v. Knauf Fiberglass GmbH*, 359 F.3d 950, 953 (7th Cir. 2004) (holding an employee must give his employer enough information to establish probable

cause to believe that he is entitled to FMLA leave, then the employer must request additional information to confirm the employee's entitlement). 10 Roads failed to request additional information to confirm Tatum's entitlement to FMLA benefits. Moreover, considering Tatum's medical records he has sufficiently pled enough facts to plausibly show entitlement to benefits. *See Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 729 (7th Cir. 2007) (finding an inference could be drawn from the record to show a plaintiff did suffer from a serious medical condition when the plaintiff was unable to return to work for three days after hospitalization for anxiety).

### III.     *FMLA Retaliation Claim*

Next, 10 Roads argues Tatum failed to state a claim for FMLA retaliation because he did not request leave, did not engage in an FMLA-protected activity, and failed to show entitlement to FMLA benefits. As explained above, Tatum has sufficiently pled that he was entitled to and requested leave.

Tatum also has alleged that he engaged in FMLA-protected activity. To make a claim for FMLA retaliation, a plaintiff can show direct, or indirect proof. *Burnett v. LFW Inc.*, 472 F.3d 471, 481 (7th Cir. 2006). Under the indirect method, a plaintiff "must show that after taking FMLA leave he was treated less favorably than other similarly situated employees who did not take FMLA leave, even though he was performing his job in a satisfactory manner." Id. at 482. "Under the direct method, a plaintiff must present evidence that his employer took materially adverse action against him on account of his protected activity." *Id.* at 481. Tatum has not pled any facts related to disparate treatment, so the court will look to the direct method. Here, facts alleged show Tatum was discharged after providing constructive notice of his intent to take FMLA leave. 10 Roads understood Tatum's actions of leaving a meeting to be an act of resignation when he was unwell and in need of hospital treatment. Because 10 Roads took his act of leaving for medical care as an act of registration, Tatum has pled sufficient facts to show a claim for retaliatory discharge. See *Burnett*,

6

472 F.3d at 482 (holding that an employee who provided constructive notice of FMLA leave and was subsequently terminated plausibly claimed retaliatory discharge).

IV.    *IWCA Retaliation Claim*

Finally, 10 Roads argues Tatum failed to state a claim for Illinois Workers' Compensation Act (IWCA) retaliation. "To maintain a claim for retaliatory discharge, an employee must prove: '(1) his status as an employee of the defendant before injury; (2) his exercise of a right granted by the Workers' Compensation Act; and (3) a causal relationship between his discharge and the exercise of his right.'" *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir. 2012) (internal citations omitted). Here, the second factor is at issue. 10 Roads argues that because Tatum never filed for IWCA benefits, he never exercised a right granted by the Illinois Workers' Compensation Act. "[A]n employee exercises a right under the IWCA merely by requesting and seeking medical attention." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir. 2012) (citation omitted). Here, Tatum sought medical attention when he left work to go directly to the emergency room. Before leaving work, he notified his supervisor he was feeling unwell and subsequently provided his medical paperwork. By seeking medical care, Tatum exercised a right granted by the IWCA. Thus, Tatum has sufficiently pled enough facts to state a claim for IWCA retaliation.

**Conclusion**

Based on the foregoing, the Court denies Defendants' partial motion to dismiss [36].


IT IS SO ORDERED.


Date: 8/18/2023

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge