UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD C. TATUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21-cv-06732 |
| v. ) | |
| ) | |
| 10 ROADS EXPRESS, LLC, 10 ROADS ) | |
| SOUTH, LLC, GINO PRESTIA, and JEFF ) | Judge Sharon Johnson Coleman |
| NATELBORG, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ronald C. Tatum ("Plaintiff") filed his First Amended Complaint against Defendants 10 Roads Express, LLC, 10 Roads South, LLC, Gino Prestia, and Jeff Natelborg ("Defendants") alleging illegal interference, denial of rights, and retaliatory termination of his employment in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA"). Plaintiff also alleges discriminatory termination under Title I of the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §§ 12101 et seq. ("ADA"), the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 et seq. ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the Illinois Worker's Compensation Act, 820 ILCS 305/1 et seq. ("IWCA") against Defendants 10 Roads Express, LLC, and 10 Roads South, LLC ("10 Roads Defendants"). Before the Court is Defendants' motion for summary judgment and Plaintiff's partial motion for summary judgment. For the following reasons, the Court grants in part, and denies in part Defendants' motion for summary judgment [91] and denies Plaintiff's partial motion for summary judgment [95].

1

**BACKGROUND**

The following facts are undisputed. Plaintiff began his employment with Eagle Express Lines, Inc. ("Eagle Express") as a truck driver on April 13, 1998. In September 2020, Plaintiff's employment was transferred from Eagle Express to 10 Roads as part of the consolidation of several companies. At the time of the incident, Plaintiff worked as a day shift lead weekend supervisor at the Homewood, Illinois office. His job duties included "dispatching, making sure the driver had their information, making sure everything was running smooth, report any call-offs, illnesses, accidents, DOT stops."

On Octobert 24, 2020, Plaintiff began his shift at 6:00 a.m. During his shift, a driver for one of Plaintiff's assigned truck loads failed to show up for his shift. Upon discovering the issue, Gino Prestia ("Prestia"), who worked in either operations or network sales, called Richard Patterson ("Patterson"), the most senior employee working at the Homewood office at that time, to inquire about the issue. Patterson approached Plaintiff's desk to discuss the issue, but Patterson indicated that he did not receive "much of an answer." Prestia asked Patterson to bring Plaintiff to a conference room so that he could talk with Plaintiff via telephone as Prestia was not physically at the Homewood office. Around 2 p.m., Plaintiff attended the meeting in the conference room with Patterson and Prestia. Prestia asked Plaintiff what he was working on. According to Prestia, Plaintiff was unable to provide specifics about the load in question. Plaintiff thereafter left the conference room and was followed by Patterson out of the building. At no time were the words "terminated" or "fired" used.

After Plaintiff walked out of the building, he got into his truck and texted his boss, Jeff Natelborg ("Natelborg"), "Tapping out you win." Plaintiff then called Natelborg who told Plaintiff to calm down. Plaintiff thereafter went to the hospital where he received medical treatment and was discharged on the same day.

At 8:21 pm that same evening, Plaintiff sent an email to Natelborg and Defendants' leave of absence department[1] claiming that he did not quit. Plaintiff also sent a text message to Natelborg at 8:43 pm claiming that he had an anxiety attack. During his deposition, Plaintiff testified that he was feeling better the next day and asked Natelborg if he wanted Plaintiff to return to work on Monday, October 26, 2020. Natelborg responded, "You are not to go in the office. HR will contact you on Monday."

On October 26, 2020, Caitlin Ellis ("Ellis"), Defendants' human resources director, exchanged a series of emails with Natelborg and Prestia regarding Plaintiff. Prestia asked "if [Plaintiff] resigned before going to the doctor, I would think that trumps worker's comp[,] no?" Ellis indicated that she planned to speak with Patrick Lafond ("Lafond"), Defendants' workers' compensation manager, to confirm their "bases were covered" and that Lafond felt "good not filing a [workers' compensation] claim unless [Plaintiff] pushes it." Lafond informed Ellis that Defendant did not need to file a workers' compensation claim unless Plaintiff decided that he wanted to pursue workers' compensation.

Shortly thereafter, Ellis emailed Natelborg and Prestia stating, "We touched base with Legal and they support moving forward with accepting the resignation." Ten minutes later, Ellis sent another email stating, "I am going to put together a document for [Plaintiff] to sign off on confirming his resignation. We will move forward with his separation regardless of whether or not he decides to sign."

An hour later, Plaintiff emailed Natelborg, Prestia, and Defendants' leave of absence department stating, "My doctor wants me to get an MRI to make sure I didn't have a min stroke trying to get in tomorrow I can come in after that if it is ok." Within minutes, Prestia emailed Ellis

---

[1] In October 2020, when a worker claims to be hurt, the usual process was to turn the issue over to the leave of absence or human resources team.

3

asking if his team should respond. She replied that she would circle back with Plaintiff and that Prestia "can disregard at this time."

The following day, on October 27, 2020, both Natelborg and Prestia emailed Ellis stating that Plaintiff had been texting and calling them and that they advised Plaintiff not to come into the office because he is not allowed in the office. Natelborg's email included the statement: "He asked why are we firing him due to a medical condition, I told him he quit to multiple individuals even going so far as to turn in his key card."

That same day, Ellis called Plaintiff. During their conversation, Ellis testified that they discussed that Plaintiff had not made a request for "any kind of leave" prior to his resignation. Ellis testified that she did not discuss FMLA leave with Plaintiff as it is Defendants' position that he was no longer at employee. Plaintiff claims that he also had a conversation with Madison Throneberry ("Throneberry"), Defendants' general counsel, during which he requested FMLA leave. Plaintiff claims that Throneberry informed him that he did not qualify for FMLA leave because he had quit. On the same day, Natelborg completed the Employee Separation Notice indicating that Plaintiff had "resigned without notice." October 24, 2020, was listed as his last day of work.

Prior to October 24, 2020, there is no record of Plaintiff experiencing an anxiety attack. Since October 24, 2020, Plaintiff has not suffered an anxiety attack. Plaintiff has been working as a full-time plumbing associate at Home Depot since April 13, 2021.

On October 3, 2022, Plaintiff filed a workers' compensation claim against Defendant. Plaintiff claims that he did not file a worker's compensation claim until October 2022 because he did not think his medical issue from October 24, 2020 was covered.

There are four main disputes in this lawsuit. First, whether Plaintiff suffered an anxiety attack on October 24, 2020. Second, whether Plaintiff quit or was terminated on October 24, 2020. Third, whether Heather McNair ("McNair"), another employee, is a similarly situated individual to

4

Plaintiff. Fourth, whether Plaintiff adequately mitigated his damages following the end of his employment with Defendant.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When determining whether there a genuine issue of material fact exists, the Court must view all evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Hackett v. City of South Bend,* 956 F.3d 504, 507 (7th Cir. 2020). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 255 (citation omitted).

**DISCUSSION**

Defendants' motion for summary judgment seeks dismissal of Plaintiff's First Amended Complaint. Plaintiff's partial motion for summary judgment seeks dismissal of Defendants' failure to mitigate affirmative defense.

    **I.    Count I: Interference with and Denial of Rights in Violation of FMLA**

To establish a claim for FMLA interference, a plaintiff must prove that (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied FMLA benefits to which he was entitled. *Riley v. City of Kokomo,* 909 F.3d 182, 188 (7th Cir. 2018). Defendants argue that Plaintiff was not eligible for FMLA leave under the first element, was not entitled to FMLA leave under the third element, and that he did not provide sufficient notice of

his intent to take FMLA leave under the fourth element. Plaintiff contends that his anxiety attack is a "serious health condition" that entitled him to FMLA leave. The Court will analyze the third element as the analysis is outcome determinative.

An employee is entitled to FMLA leave if he suffers from "a serious health condition that makes the employee unable to perform the functions of the position..." 29 U.S.C. § 2612(a)(1)(D). The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). As Plaintiff did not receive inpatient care, the question is whether Plaintiff received continuing treatment following the medical care he received on October 24, 2020. To prove the existence of a "serious health condition," an employee must show that he was incapacitated, rendering him unable to work for more than three consecutive calendar days. *See* 29 C.F.R. § 825.115.

Plaintiff sought medical care on October 24, 2020. Plaintiff testified that he felt better the following day. Plaintiff texted Natelborg asking if he wanted Plaintiff to come back to work on Monday, October 26, 2020. The undisputed facts show that Plaintiff felt good enough to ask if he should return to work on Monday, two days after he received treatment at the hospital. It is reasonable to conclude that if Plaintiff felt better the following day and asked if he should return to work on Monday, he was not incapacitated, rendering him unable to work, for more than three consecutive, full calendar days. There was no period of incapacity and, therefore, Plaintiff did not suffer from a "serious health condition." The Court grants Defendants' motion for summary judgment on Count I.[2]

---

[2] As the Court grants Defendants' motion for summary judgment on Count I, whether Natelborg and Prestia are individually liable under Count I is moot.

## II. Count II: Retaliation in Violation of FMLA

To prove a FMLA retaliation claim, a plaintiff must show (1) the employee was engaged in statutorily protected activity; (2) the employer subjected him to an adverse action; and (3) the protected activity caused the adverse action. *See Riley,* 909 F.3d at 188.

Defendants argues that Plaintiff's FMLA retaliation claim should be dismissed because he does not meet the requirements to show that he suffered from a "serious health condition." Plaintiff argues that Defendants' reason for denying Plaintiff's FMLA request was pretextual based on Defendants' inconsistent statements. He also argues that the adverse action occurred on the heels of "suspicious timing" as he engaged in FMLA protected activity when he requested and was approved for FMLA leave in August 2020 and had three other health issues that required missing work and/or claims for disability benefits in 2020, the most recent in October 2020.

Plaintiff's claim fails on the first element. Since the Court concluded that Plaintiff has not adequately alleged that he suffered from a "serious health condition" on Count I, he cannot sustain a FMLA retaliation claim because he is not covered by the statute. As Plaintiff did not suffer a "serious health condition," the Court need not address the merits of Plaintiff's suspicious timing argument. Accordingly, the Court grants summary judgment on Count II.[3]

## III. Count III: Disability Discrimination and Failure to Accommodate

The ADA prohibits discrimination against "a qualified individual with a disability…" *See* 42 U.S.C. § 12112(a). An individual is considered to have a disability under the ADA if (1) he has an impairment that substantially limits one or more of his major life activities; (2) he has a record of such an impairment; or (3) his employer regards him as having such an impairment. *See* 42 U.S.C. § 12102(2). Temporary, short-term restrictions are not substantially limiting so as to support a finding

---

[3] As the Court grants Defendants' motion for summary judgment on Count II, whether Natelborg and Prestia are individually liable under Count II is moot.

7

of disability. *See* 42 U.S.C. § 12101 *et seq.* An individual is not regarded as having an impairment that is transitory and minor, where the impairment has an actual or expected duration of 6 months or less. 42 U.S.C. § 12102(3)(B). The main question is whether Plaintiff's claimed anxiety attack on October 24, 2020 rendered him disabled under the ADA.

10 Roads Defendants argue that Plaintiff is not disabled because he did not have an anxiety attack prior to October 24, 2020, and has not had one since. Plaintiff argues that he was substantially limited in one or more major life activities on October 24, 2020 when he suffered the anxiety attack and was therefore disabled.

Plaintiff's ADA claim fails because he cannot show that he is disabled under the statute. Plaintiff claims that the anxiety attack he suffered on October 24, 2020 constituted a disability at the time the anxiety attack occurred, yet it is undisputed that Plaintiff felt better the next day and asked Natelborg if he should return to work. The temporary nature of Plaintiff's anxiety attack, which was treated within hours, is not considered a disability under the ADA. *Vande Zande v. State of Wisconsin Dept. of Admin.,* 44 F.3d 538, 543 (7th Cir. 1995) ("Intermittent, episodic impairments are not disabilities…"). As Plaintiff is not disabled under the ADA, the Court grants summary judgment on Count III.

**IV.    Age Discrimination**

The ADEA protects workers who are 40 years of age and older from age-based employment discrimination. *See* 29 U.S.C. § 623(a)(1). The Seventh Circuit has determined that the test "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [age] caused the discharge or other adverse employment action." *See Ortiz v. Werner Enterpriseds, Inc.,* 834 F.3d 760, 765 (7th Cir. 2016). However, courts in this circuit still employ *McDonnell Douglas* as a means of organizing, presenting, and assessing circumstantial evidence." *See David v. Bd. of Trustees of*

*Comm. College Dist. No. 508,* 846 F.3d 216, 224 (7th Cir. 2017). As Plaintiff's ADEA claim involves circumstantial evidence, the Court will employ the *McDonnell Douglas* framework.

Under *McDonnell Douglas*, a plaintiff must prove that (1) he is a member of the protected class; (2) his performance met defendant's legitimate expectations; (3) he was subject to an adverse employment action; and (4) defendant treated similarly situated employees outside of his protected class more favorably. *Faas v. Sears, Roebuck & Co.,* 532 F.3d 633, 641 (7th Cir. 2008). It is undisputed that Plaintiff meets the first two prongs of the framework and there is a genuine dispute of material fact concerning the third prong. Accordingly, the Court will evaluate whether the fourth prong is satisfied.

10 Roads Defendants argue that there is no evidence that they treated a similarly situated employee outside of the protected class more favorably. Plaintiff argues that McNair, a younger employee, was treated more favorably when she left during her shift because she was reinstated to her position while Plaintiff was not. 10 Roads Defendants contend that McNair is not similarly situated because she does not have the same job duties as Plaintiff and her response to the situation drastically differed from Plaintiff's.

The undisputed facts show that McNair cleaned out her desk and left her shift early. She texted her supervisor, Nick Orlando ("Orlando"), that she was "done." She also texted Orlando that she would return the following day and talk to Natelborg about her situation as Orlando was on vacation at the time. McNair met with Natelborg the following day. During their conversation, McNair discussed the dispatch issues and personal issues that caused her to leave in the middle of her shift. Natelborg and McNair discussed stress management and areas of improvement. Following their discussion, McNair informed Natelborg that she wanted to continue her employment despite her statements the previous day. McNair was allowed to return to work. At

9

the time, McNair was working as a lead dispatcher. She did not supervise any employees nor did her job duties require her to make any "final calls."

On October 24, 2020, Plaintiff was a 59-year-old man.[4] McNair's deposition testimony confirms that she was 44 years old at the time. *See* McNair Dep. Tr., 22:25 – 23:3. The ADEA protects all individuals over the age of 40. *See* 29 U.S.C. § 623(a)(1). Because Plaintiff and McNair were both protected under the statute, the fourth prong is not satisfied. The Court grants Defendant's motion for summary judgment on Count IV.

## V. Count V: Sex Discrimination

The Seventh Circuit has recognized that "discrimination by employers against white men is a less common phenomenon than discrimination against minorities." *Phelan v. City of Chicago,* 347 F.3d 679, 684 (7th Cir. 2003) (citing *Mills v. Health Care Service Corp.,* 171 F.3d 450, 456-57 (7th Cir. 1999).[5] Accordingly, "reverse" sex discrimination claims asserted by male plaintiffs are subject to a modified test. *See Mills,* 171 F.3d at 457. As with Plaintiff's ADEA claim, the Court will employe the modified *McDonnell Douglas* framework to evaluate Plaintiff's sex discrimination claim.

Under this modified test, a plaintiff must show that (1) "background circumstances exist to show an inference that the employer has reason or inclination to discriminate invidiously against [men] or evidence that there is something 'fishy' about the facts at hand; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated individuals who are not members of his protected class." *Formella v. Brennan,* 817 F.3d 503, 511 (7th Cir. 2016). While there was a dispatch issue for one of Plaintiff's loads that led to the end of Plaintiff's employment, there is seemingly no

---

[4] The First Amended Complaint, filed in October 2022, states that Plaintiff is a 61-year-old man. Since the events that gave rise to the claims in the First Amended Complaint occurred in October 2020, the Court can reasonably infer that Plaintiff was 59 at the time of the Incident.
[5] Despite Plaintiff's argument that "reverse" sex discrimination claims should be subject to the same test as sex discrimination claims, the Court will apply the modified test recognized by the Seventh Circuit.

10

dispute about the second prong. While the parties dispute whether the three remaining prongs are satisfied, the Court will focus its analysis on the fourth prong as the analysis is outcome determinative.

To show that an employee is "similarly situated" to the plaintiff, the employee must be "directly comparable in all material respects." *Ineichen v. Ameritech*, 410 F.3d 956, 960 (7th Cir. 2005). This requires a plaintiff to show not only that the employee reported to the same supervisor, engaged in the same conduct, and had the same qualifications, but also show that there were no differentiating or mitigating circumstances that would distinguish the employer's treatment of plaintiff. *Ineichen,* 410 F.3d at 960-61.

10 Roads Defendants argue that Plaintiff and McNair are not similarly situated because McNair's supervisor was Orlando while Plaintiff's was Natelborg; Natelborg only handled McNair's reinstatement because Orlando was on vacation. 10 Roads Defendants also contend that Plaintiff and McNair are not similarly situated because Plaintiff was a supervisor who made "final calls" while McNair was not a supervisor and only made "final calls" if there was no supervisor present. Lastly, 10 Roads Defendants contend that Plaintiff and McNair did not engage in similar conduct as McNair's response to her situation differed from that of Plaintiff's through her conduct and willingness to communicate. Plaintiff alleges that he is similarly situated to McNair because Natelborg, Plaintiff's supervisor, acted as McNair's supervisor when he made the decision to reinstate McNair's employment, McNair and Plaintiff both engaged in similar conduct by leaving during their shift, McNair and Plaintiff had the same qualifications and job responsibilities, and that there were no differentiating factors between McNair and Plaintiff that would necessitate differentiating treatment.

Several facts distinguish Plaintiff's situation from McNair. It is undisputed that Plaintiff's supervisor was Natelborg while McNair's was Orlando. The facts clearly show that Natelborg was

11

substituting in for Orlando when he made the decision to allow McNair to return to work despite her abrupt departure. Additionally, Plaintiff and McNair did not have similar duties. Plaintiff was a supervisor with a direct report while McNair had no supervisory responsibility as a lead dispatcher. Although the same conduct and differentiating/mitigating factors analyses may not be as straightforward, a similarly situated employee "must be directly comparable in all material respects." *See Ineichen,* 410 F.3d at 960-61. The undisputed facts show that, as a minimum, Plaintiff and McNair had different jobs and supervisors. This is enough to conclude that they are not similarly situated to one another and the fourth prong is not satisfied. The Court finds that summary judgment is proper on Count V.

### VI.     Count VI: Retaliatory Discharge Under IWCA

To maintain a claim for retaliatory discharge, an employee must prove: "(1) his status as an employee of the defendant before injury; (2) his exercise of a right granted by the Workers' Compensation Act; and (3) a causal relationship between his discharge and the exercise of his right." *Gordon v. FedEx Freight, Inc.,* 674 F.3d 769, 773 (7th Cir. 2012). There are several ways an employee can exercise a right under the IWCA. *See Gordon,* 674 F.3d at 773. Relevant here is where an employee exercises a right under the IWCA merely by requesting and seeking medical attention. *Id.* at 773.

10 Roads Defendants argue that Plaintiff's IWCA application was filed two years after the end of his employment and therefore, he is not entitled to worker's compensation. 10 Roads Defendants also contend that Plaintiff did not request and seek medical attention for his anxiety attack because he did so after he resigned, so there is no causal connection to any alleged discharge. Plaintiff argues that 10 Roads Defendants communications concerning whether they had to file a worker's compensation claim show that the true motive for "accepting" the alleged resignation was to avert a worker's compensation claim.

While there is a genuine dispute as to whether Plaintiff quit or resigned on October 24, 2020, it is undisputed that, on the same day, Plaintiff emailed Natelborg and Defendants' leave of absence department indicating that he had a meltdown and received medical treatment for stress and anxiety disorder. Further undisputed, on October 26, 2020, Prestia, Natelborg, and Ellis exchanged several emails regarding a potential worker's compensation claim. Prestia specifically asked, "if [Plaintiff] resigned before going to the doctor, I would think that trumps any workers comp[,] no?" Ellis told Prestia and Natelborg that she wanted to speak with Lafond to confirm that their bases were covered and that he felt good about not filing a worker's compensation claim unless Plaintiff pushed it. Ellis also informed Prestia and Natelborg that Legal supported moving forward with accepting Plaintiff's resignation whether or not Plaintiff decided to sign the separation agreement.

While these communications were occurring, Plaintiff separately sent an email to Defendants' leave of absence and human resources departments, Natelborg, and Prestia stating, "My doctor wants me to get an MRI to make sure I didn't have a min stroke trying to get in tomorrow I can come in after if that's ok." There was no response to that email. The following day, on October 27, 2020, Plaintiff was informed that Defendants accepted his resignation, the final date of employment listed as October 24, 2020. When Plaintiff spoke with Ellis on the same day, she did not ask him whether he intended to file a worker's compensation claim.

10 Roads Defendants were aware that Plaintiff sought and received medical treatment on October 24, 2020, and were aware that Plaintiff was planning to get an MRI on October 27, 2020. Further, despite the final date of employment listed as October 24, 2020 on the separation agreement, the Ellis, Prestia, and Natelborg communications on October 26, 2020 suggest that 10 Roads Defendants had not yet accepted the resignation based on Prestia's email stating "**if** [Plaintiff] resigned before going to the doctor…" Clearly, there is a genuine dispute of material fact as to whether Plaintiff's employment actually ended on October 24, 2020.

Additionally, Plaintiff's emails suggest that he was unaware that he was no longer an employee until October 27, 2020. At a minimum, 10 Roads Defendants knew that Plaintiff requested medical attention in the form of an MRI on October 26, 2020, but a jury could conclude that the medical attention Plaintiff received on October 24, 2020 was covered by the IWCA. As Plaintiff received the separation agreement on October 27, 2020, a jury could conclude that Plaintiff still believed he was an employee when he requested MRI treatment on October 26, 2020 and that the October 24, 2020 and October 26, 2020 requested medical treatment was casually connected to an alleged discharge. Accordingly, the Court denies summary judgment on Count VI.

## VII.  Failure to Mitigate Damages Affirmative Defense

Plaintiff filed a partial motion for summary judgment on Defendants' failure to mitigate damages affirmative defense.

Although the duty to mitigate falls on the plaintiff, a defendant must establish that the plaintiff failed to mitigate his damages. *See Hutchinson v. Amateur Elec. Supply, Inc.,* 42 F.3d 1037, 1044 (7th Cir. 1994). To establish a failure to mitigate damages affirmative defense, a defendant must show that (1) plaintiff failed to exercise reasonable diligence to mitigate his damages; and (2) there was a reasonable likelihood that plaintiff might have found comparable work by exercising reasonable diligence. *Hutchinson,* 42 F.3d at 1044.

Plaintiff argues that Defendants have not satisfied the elements for the affirmative defense because Plaintiff continued to job search while working at Home Depot by submitting his resume through Indeed and talking with contractor-customers about potential jobs at Home Depot. In support of his motion, Plaintiff submits an affidavit stating that Plaintiff has spent 10-15 hours/week applying to jobs, had six interviews while working at Home Depot, and applied to 50-75 jobs since his employment with Defendants ended. Defendants argue that Plaintiff did not satisfy his duty to mitigate because his background and experience, namely 20 years of experience in

14

the freight shipping industry and his prior supervisory role while working for Defendants, suggests that he could have found a comparable job, but instead took a lower-paying job at Home Depot.

Separately, Defendants ask the Court to disregard the Plaintiff's affidavit, attached to his partial motion for summary judgment, arguing that it contradicts his deposition testimony. Defendants allege that Plaintiff testified that he only had one interview with a towing company since his employment ended. However, his affidavit states that he had six interviews. Plaintiff contends that the affidavit does not contradict his deposition testimony because discovery documents showed Plaintiff's job search, but Defendants failed to ask the correct questions. Plaintiff also argues that the affidavit supplements his deposition testimony because he did not provide a clear answer to an unambiguous question, which would be grounds for excluding the affidavit. The Court will address the affidavit issue first.

The sham affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony. *James v. Hale,* 959 F.3d 307, 316 (7th Cir. 2020).

The Court is not persuaded by Plaintiff's argument. Here, Plaintiff's affidavit provides contradictory information about the number of job interviews Plaintiff had. This contradiction does not concern minor details. The gravamen of Defendants' failure to mitigate affirmative defense is that Plaintiff did not satisfy his duty to mitigate his damages by securing comparable employment. This entails a context-sensitive, fact-bound inquiry into the steps Plaintiff took to find comparable employment and whether such steps were reasonable. *See James,* 959 F.3d at 316-27. There is no suggestion that the affidavit contains newly discovered evidence, that it contradicts a statement that was demonstrably mistaken, nor does the affidavit clarify unambiguous or confusing deposition testimony that would fall into one of the exceptions to the sham affidavit rule. *See id.* at 317. To the contrary, Plaintiff admits that the evidence supporting his affidavit was part of the record at the time of Plaintiff's deposition. The Court concludes that the affidavit should be disregarded.

Further, the Court is not convinced that the evidence unequivocally shows that Defendants failed to plead their failure to mitigate damages affirmative defense. Plaintiff's cited caselaw does not support such conclusion. The Court has reviewed all of Plaintiff's cited caselaw and finds the following cases most relevant to its conclusion. In *Coffey v. DSW Shoe Warehouse, Inc.,* the court determined that defendant failed to offer evidence to meet its burden. 145 F.Supp.3d 771, 779. Here, however, Defendants cite Plaintiff's 20 years of experience in the freight shipping industry and his supervisory role to show that his experience and background suggest that he could have secured a comparable role. As support, Defendants reference discovery documents from Plaintiff's job search to show the availability of jobs at freight companies. Additionally, in *Gracia v. Sigmatron International, Inc.,* the court analyzed the failure to mitigate defense following a jury trial, not at the summary judgment stage. 130 F.Supp.3d 1249, 1256-58 (7th Cir. 2015). In *Ortega v. Chi. Bd. of Edu.,* Judge Durkin analyzed the defense following a post-jury verdict equitable relief hearing. 280 F.Supp.3d 1072, 1077 (N.D. Ill. 2017) (Durkin, J.).

At this stage in the litigation, the facts do not permit this Court to grant summary judgment on Defendant's failure to mitigate affirmative defense. In other words, there is no undisputed evidence to make a finding that Plaintiff failed to mitigate damages. Such inquiry is better suited for a jury. Accordingly, the Court denies Plaintiff's partial motion for summary judgment.

**CONCLUSION**

For these reasons, the Court grants in part, and denies in part, Defendants' motion for summary judgment [91] and denies Plaintiff's partial motion for summary judgment [95].

**IT IS SO ORDERED.**

Date: 12/17/2024

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge