IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD C. TATUM,<br><br>    Plaintiff,<br><br>v.<br><br>10 ROADS EXPRESS, LLC,<br><br>    Defendant. | Case No. 21-cv-06732<br><br>Judge Sharon Johnson Coleman<br>Magistrate Judge Beth Jantz<br><br>JURY DEMANDED |

**PLAINTIFF'S TRIAL BRIEF IN SUPPORT OF ALLOWING THE JURY TO DECIDE WHETHER TO AWARD PUNITIVE DAMAGES**

Plaintiff, RONALD C. TATUM, by and through his attorneys, THE COFFEY LAW OFFICE, P.C., respectfully submits the following legal authority in support of the Court allowing the jury to decide whether to award punitive damages.

*Introduction*

This is a workers' compensation retaliatory discharge case where Plaintiff Ron Tatum must prove that he was an employee of Defendant 10 Roads before being injured at work, he exercised a right or rights granted by the Workers' Compensation Act, and there is a causal relationship between his discharge and the exercise of his rights. *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir. 2012). As this Court determined when it denied 10 Roads' motion to dismiss Tatum's WC retaliatory discharge claim,

> [A]n employee exercises a right under the IWCA merely by requesting and seeking medical attention." *Gordon v. FedEx Freight, Inc.,* 674 F.3d 769, 773 (7th Cir. 2012) (citation omitted). Here, Tatum sought medical attention when he left work to go directly to the emergency room. Before leaving work, he notified his supervisor he was feeling unwell and subsequently provided his medical paperwork. By seeking medical care, Tatum exercised a right granted by the IWCA. Dkt. #63, p. 7.

Additionally, in denying 10 Roads's motion for summary judgment on Tatum's WC retaliatory discharge claim, this Court found that 10 Roads "knew that [Tatum] requested medical attention in the form of an MRI on October 26, 2020, but a jury could [also] conclude that the medical attention Plaintiff received on October 24, 2020 was covered by the IWCA." Dkt. #130, p. 14.

## I. It is Well Established that Punitive Damages are Available in Retaliatory Discharge Cases.

"Illinois recognizes that punitive damages are appropriate in cases of retaliatory discharge for filing a workers' compensation claim." *Hollowell v. Wilder Corp. of Delaware*, 318 Ill. App. 3d 984, 988, 743 N.E.2d 707, 252 Ill. Dec. 839 (2001) (citing *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186, 384 N.E.2d 353, 23 Ill. Dec. 559 (1978)); *Motsch v. Pine Roofing Co.*, 178 Ill. App. 3d 169, 177 (1st Dist. 1989); *Witt v. Forest Hospital, Inc.*, 115 Ill. App. 3d 481, 490-91 (1st Dist. 1983). In *Kelsay*, a workers' compensation retaliatory discharge case, the Illinois Supreme Court noted:

> In the absence of the deterrent effect of punitive damages there would be little to dissuade an employer from engaging in the practice of discharging an employee for filing a workmen's compensation claim. * * * [Therefore,] punitive damages must be permitted to prevent the discharging of employees for filing workmen's compensation claims.

"Punitive damages may be awarded where retaliatory discharge has been committed with fraud, actual malice, deliberate violence or oppression, **or** when the defendant has acted willfully, **or** with such gross negligence as to indicate a wanton disregard of the rights of others." *Blount v. Stroud,* 395 Ill. App. 3d 8, 20 (2009).

Before a jury can consider the issue of punitive damages, the trial court must make a preliminary determination of whether the facts of the particular case justify submitting the issue to the jury for consideration. *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1138, 818 N.E.2d 357, 367, 288 Ill. Dec. 669 (2004). However, because the jury will only reach the

question of punitive damages after it has found defendant liable for retaliatory discharge, Tatum contends that the Court should assess the evidence with the assumption that the jury has found his theory of the case credible and supported by the evidence (or at least more so than 10 Roads'). The question for the Court therefore is not whether it would award Tatum punitive damages, but whether a reasonable jury could do so based on the evidence viewed in favor of Tatum.

> II. The Evidence Shows 10 Rods' Willful and Wanton Retaliation Against Tatum and Reckless Disregard for his Rights.

This is an intentional tort case. It is not a negligence action. To prevail Tatum must show 10 Roads' intentional retaliatory discharge of his employment. He has done that in spades. In order to warrant punitive damages, Tatum must go above and beyond minimum proof; but just beyond, not to a great distance. See *Gracia v. Sigmatron Int'l, Inc.*, 102 F. Supp. 3d 983, 993, 2015 U.S. Dist. LEXIS 51838, *20-21 ("Even without other facts in aggravation, the mere act of retaliatory discharge, followed up by an effort to hide it using the kind of false (again, as the jury found) paper trail a company can create, is the kind of insidious conduct long targeted by civil-rights laws like Title VII."); see also *Kritzen v. Flender Corp.*, 226 Ill. App. 3d 541, 554-55, 589 N.E.2d 909, 168 Ill. Dec. 509 (1992) (jury not instructed on punitive damages because the record only showed evidence of a "causal connection" and not the extra required). The following evidence shows that 10 Roads' managerial employees planned to terminate his employment expressly because of his protected workers' compensation activity and to negate and to gain advantage in any future workers' compensation claim that he may file. From such evidence, a reasonable juror could find that 10 Roads' retaliatory discharge of Tatum was in intentional and reckless disregard for his rights under the IWCA.

(1) Manager Gino Prestia and Ron Patterson threatened Ron with termination of his

employment, i.e., Prestia is taking it as a resignation, if he did not come back into the conference room at a time when they knew he was undergoing a health related issue. When he was not able to return to the conference room, Patterson came to Ron's desk where he was slumped over, and stated that Prestia was taking Ron's actions as a resignation, and told Ron t get his bag and leave because they were accepting his resignation. See Jnt. Trl. Stips, p. 3, ¶7. The only evidence in the record shows that Ron's anxiety attack at work on 10-24-202 was caused by work and he had a good faith belief it was caused by work. This threat by 10 Roads' managerial employees placed Ron in the untenable position of having to choose between keeping his job or leaving work to get the medical care he needed. This is exactly what the type of employer interference and coercion that the IWCA states is unlawful. See 820 ILCS 305/4(h).

(2) 10 Roads, by and through its managerial employees, including its part owner and GM Rico Prestia, intentionally planned to "negate"[1] Ron's rights under the Illinois Workers' Compensation Act. In response to Mr. Prestia's October 26, 2020 email stating, "Caitlin if [Ron] resigned before going to the doctor, I would think that trumps any work comp claim," 10 Roads' HR Director Caitlin Ellis, stated "I just want to check with Patrick [Lafond, 10 Roads' Workers' Compensation Manager] to make sure our bases our covered and he feels good with not filing a claim unless Ron pushes it." See P Ex. 4, DEF808. Ron's supervisor, Operations Manager Jeff Natelborg and M.s Ellis' boss, manager Wes Hiet were copies on this email. Less than five hours later, Ms. Ellis announces to the managerial group that she is drafting a separation letter to Ron and 10 Roads will move forward with his separation regardless of whether or not he decides to sign. Id. at DEF807. The termination letter was then sent to Ron a couple of hours later on October 26th. P's Ex. 6, DER812-13. These emails show 10 Roads' intentional plan by and

---

[1] In the words of 10 Roads' HR Director Caitlin Ellis. Ellis Trial Testimony 10/ /2025

4

through it managerial employees to gain an advantage with respect to any in any WC claim filed by Ron in the future related to his 10-24-2020 workplace injury and thereby negate and compromise his protected rights under the Illinois Workers' Compensation Act.

(3)     Seven days after terminating Ron's employment, 10 Roads' instructs the three managers ( Jeff Natelborg, Gino Prestia and Ron Patterson) who communicated with Ron on 1-24-202 to draft and submit statements.

(4)     The statements include numerous allegations concerning Tatum's conduct on 10-24-2020 that conflict and are inconsistent with each other as well as other evidence set forth in 10 Road's documents.

(5)     Ron testified that Patterson called him the night of 10-24-2020 after Ron had returned home from the hospital. Ron stated that Paterson got angry and asked him "why" and stated, "what the f___," in response to Ron stating that he went to the hospital.

(6)     Natelborg testified that he had verbal conversations with both Gino Prestia and Ron Patterson after Tatum left work on October 24 2020. Both of them testified that they do not recall any such conversations.

(7)     Ellis testified that she had verbal conversations with both Gino Prestia and Ron Patterson regarding what they heard and saw on October 24th. Both of them testified that they do not recall any such conversations.

(8)     In addition to the evidence described above, the jury can infer from the repeated answers of "I don't recall" in response to basic questions that the major witnesses for 10 Roads should have been able to answer, that 10 Roads has pursued a strategy at trial of hiding the truth from them. This is yet additional evidence of 10 Roads' attempt to cover up the truth as to its reason why it terminated Ron's employment.

(9)     10 Roads' paid Ron for over 9 hours of regular work time during the pay period starting October 25, 2020. Additional evidence showing that Ron's employment did not end on October 24, 2020, as 10 Roads' claim.

III.    ***Courts have submitted the issue of punitive damages for determination by a jury on evidentiary records similar to and lesser than this one.***

In *Koehler v. Packer Group, Inc.,* 2016 IL App (1st) 142767, P89-P90, the court held that the trial court did not err in submitting the issue of punitive damages to the jury based on evidence showing that the individual defendants conspired to terminate his employment because of his legally protected activity and that they "operated in bad faith, to protect their own interests and to harm [plaintiff]," and that "their actions were adverse to the company's interests."

Similarly, the court in Estrada v. Hospira, Inc., 2017 IL App (2d) 151167-U, P115-P121, determined that the trial court did not err in instructing the jury on the issue of punitive damages with respect to the retaliatory discharge claim. Defendant Hospira argued that the evidence only established a *prima facie* case of retaliatory discharge, not the extra required for punitive damages, i.e., there was no showing that it had engaged in a course of sustained misconduct directed against plaintiff; all events were temporally related; and plaintiff's discharge was made after investigation and with consultation from an independent department. The court disagreed however stating that plaintiff's evidence when viewed favorably to plaintiff, showed that defendant's supervisory employees attempted to remove inaccurate information from the investigative files, and other evidence showed that the alleged independent investigation was flawed (i.e., destroyed notes and delay in entering information into the permanent record, investigation report did not include a finding that plaintiff violated work rules or policies, and the report contained little information that would warrant plaintiff's termination). Plaintiff also presented timing of a close temporal gap between protected activity and Hospira's decision to

terminate plaintiff's employment.

A suspicious temporal gap is also present here – 10 Roads' decision to "accept" Ron's alleged resignation and end his employment was made on October 26, 2020, the very day that decisionmaker Caitlin Ellis learned that Ron claimed to have been injured at work over th weekend and sought and received related medical care. As is necessary for punitive damages, and similar to *Estrada*, the evidence detailed above shows mush more than suspicious timing, including a scheme to negate a future workers' comp claim hatched by GM/part owner Rico Prestia and Ellis just hours before Ellis announced 10 Roads' decision to fire Ron.

The court in *Francek v. Dominick's Finer Foods, LLC*, 2017 IL App (1st) 162574-U, P39, also held that the trial did not err in submitting the issue of punitive damages to the jury. As the court noted in its order denying defendants' postjudgment motion for relief, "[t]he jury was able to assess the full picture of [defendants'] actions regarding their attendance policy, changes in their attendance policy and the manner and methods they used to warn and then terminate employees here," including Leitner's admission that he began running the clock on Francek's leave allowance under the FMLA simply because he questioned the legitimacy of Francek's work-related injury claim. *Koehler*, 2016 IL App (1st) 142767, ¶ 90; *Holland*, 2013 IL App (5th) 110560, ¶ 231. The Francek court find that such evidence of defendant's actions, "when considered in their entirety, showed a pattern of willful and wanton disregard for Francek's rights as an injured employee, including his protection against discharge for exercising his rights under the Act."

Las, in *Gracia v. Sigmatron Int'l, Inc.*, 102 F. Supp. 3d 983, 993 (N.D. Ill. 2015), the court upheld the jury's punitive damages award in retaliatory discharge case under Title VII. Defendant argued that the award should be remitted to zero because its actions were not

7

particularly egregious, insisting that it fired plaintiff based on a belief that she violated work/performance standards. In rejecting such argument, the court found that the jury (based on the evidence) "reasonably rejected that story as pretense—in other words, a lie offered to obscure the fact that the company fired Gracia in retaliation after she complained of what she believed to be unlawful treatment." The court "[i]t is true that the facts here do not rise to level of the most shocking cases of retaliatory behavior out there. [citations omitted] But Sigmatron is wrong to argue that its behavior (as the jury found it) was so innocuous as to merit nothing in punitive damages." Citing *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 533, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999) (rejecting argument that punitive damages only available in "extraordinarily egregious" cases).

The *Gracia* court went on to state that "[e]ven without other facts in aggravation, the mere act of retaliatory discharge, followed up by an effort to hide it using the kind of false (again, as the jury found) paper trail a company can create, is the kind of insidious conduct long targeted by civil-rights laws like Title VII. Indeed, the jury could infer, and apparently did, from the conflicting testimony that Fairhead went so far as to manufacture details of reports and meetings involving Trujillo and other managers, in an effort to justify the company line for why Gracia was fired. The jury could further take into account that it was a company vice president—upper management—who was involved in such behavior to send the punitive message that it did." *Gracia v. Sigmatron Int'l, Inc.,* 102 F. Supp. 3d 983, 993, 2015 U.S. Dist. LEXIS 51838, *20-21

 IV. **The Evidence in the Record, Viewed in Favor of Tatum, More Than Satisfies I.P.I. No. 35.02.**

The parties have submitted an agreed punitive damages jury instruction based on IPI 35.02 ("Punitive/Exemplary Damages--Willful and Wanton Conduct--Corporate Defendant's

Liability"), as follows

>Under Illinois law, Defendant is a Limited Liability Company ("LLC") and can act only through their officers and employees. As to Plaintiff's claim for compensatory damages against Defendant, any act or omission of an officer or employee within the scope of his employment is the act or omission of Defendant.
>
>As to Plaintiff's claim for punitive damages under the common law of Illinois against Defendant, a different rule applies. Punitive damages may be awarded against Defendant only (1) if you find in favor of Plaintiff and against Defendant on Plaintiff's retaliatory discharge claim, and (2) if you find that, as to the acts or omissions giving rise to Defendants' liability under Illinois law,
>
>>(a) The LLC, through its management, authorized the doing and the manner of the act or omission; or
>>
>>(b) The employee(s) responsible for the act or omission was/were unfit, and the LLC was reckless in employing him/her/them; or
>>
>>(c) The act or omission was that of a managerial employee(s) who was/were acting in the scope of his/her/their employment; or
>>
>>(d) The LLC, through its management or a managerial employee(s), ratified or approved the act or omission.

The undisputed evidence here is that 10 Roads' managerial employees and a part owner schemed to end Ron's employment because of and directly related to the exercise of his workers compensation rights and fully aware that such exercise i.e., continued medical treatment related to the workplace injury, would continue into the future and they also discussed how they could "trump" and negate any WC claim filed by Ron in the future "if he had resigned before he went to the doctor." Such evidence fully satisfies (a), (c), and (d) above.

**Wherefore**, Plaintiff respectfully requests that this Court allow the jury to decide whether punitive damages are warranted under Illinois law and to instruct them accordingly.

>Respectfully submitted,
>Plaintiff, RONALD C. TATUM,
>
>
>By: /s/ Timothy J. Coffey

Timothy J. Coffey (ARDC # 6224686)
THE COFFEY LAW OFFICE, P.C.
One of the Attorneys for RONALD C. TATUM
118 N. Clinton Street, Suite 125
Chicago, IL 60661
(312) 627-9700
(630) 326-6601 (fx)
tcoffey@worker-law.com