**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RONALD C. TATUM, ) | |
| ) | No: 1:21-cv-06732 |
| Plaintiff, ) | |
| v. ) | Assigned Judge: Sharon Johnson Coleman |
| ) | |
| 10 ROADS EXPRESS, LLC, ET AL., ) | |
| ) | Magistrate Judge: Beth W. Jantz |
| Defendants. ) | |

### DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant 10 Roads Express, LLC ("10 Roads"), by its undersigned attorney, hereby moves, pursuant to Fed. R. Civ. P. 50(b), for judgment in its favor as matter of law and states as follows:

### INTRODUCTION

Rule 50 of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a) (motion for judgment as a matter of law), (b) (renewed motion for judgment as a matter of law). In deciding a Rule 50 motion, the court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence. *See Tart v. Illinois Power Co*., 366 F.3d 461, 464 (7th Cir. 2004)(citing *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 150–51 (2000)). The court does not make credibility determinations or weigh the evidence. *See Waite v. Board of Trustees of Illinois Comm. College Dist. No. 508*, 408 F.3d 339, 343 (7th Cir. 2005)(citing *Reeves*, 530 U.S. at 150). Although the court reviews the entire record, the court "must disregard

all evidence favorable to the moving party that the jury [was] not required to believe." *Reeves*, 530 U.S. at 151.

Rule 50(b) states in relevant part:

If the court does not grant a motion for judgment as a matter of law under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

At the close of 10 Roads' case, 10 Roads moved under Rule 50(a) for judgment as a matter of law. (Dkt. 192, Tr. 866-874.) That motion was denied. (Dkt. 194; Tr. 874:4-21.)

**ARGUMENT**

The three necessary elements for a workers' compensation retaliatory discharge are: "(1) plaintiff's status as an employee of defendant before injury; (2) plaintiff's exercise of a right granted by the Act; and (3) employee's discharge causally related to the filing of a claim under the Act." *Eckerty v. E. Ill. Foodbank*, 2022 IL App. (4th) 210537, ¶ 21 (citing *Slover v. Brown*, 140 Ill.App.3d 618, 620-21 (5th Dist. 1986)). The ultimate issue concerning the element of causation is the employer's motive in discharging the employee. *Siekierka v. United Steel Deck, Inc.*, 373 Ill.App.3d 214, 221 (3d Dist. 2007). Causality may exist when the evidence reveals a connection between the employee's actions (or anticipated actions) pursuant to the Illinois Workers' Compensation Act ("Act") and the employer discharging the employee. *Eckerty*, 2022 IL App (4th) 210537, ¶ 21.

In this case, it was not reasonable for the jury to find that find that Ronald Tatum ("Tatum") was discharged let alone that he was discharged for engaging in activities protected by the Act. As a result, the jury's verdict was not reasonably based on the evidence.

2

A. **The Evidence Overwhelmingly Establishes that Tatum Resigned.**

In this case the evidence overwhelming establishes that Tatum had resigned. It was not reasonable for the jury to find otherwise. As a result, judgment should be entered in favor of 10 Roads.

As Gino Prestia and Richard Patterson ("Patterson") testified that on October 24, 2020, during the interaction with Tatum in the conference room, Tatum stormed out of the room, told them that he was "retiring" and that he was "done." (Tr. 652:18-21; 732:1-22.)[1] Patterson, who was present with Tatum in the conference room, testified:

> Q You state that Ron -- later on Ron at that point stormed out of the room and said I'm done?
> A Correct.
> Q And when you say he stormed out of the room, what do you mean by that?
> A Would have got up hastily and got up and left very quickly.
> Q And when he said that he was done, how did you interpret that?
> A Done with being like I quit. I tap out. I mean, whatever you want to -- however you want to phrase it.
> Q Okay. You state, I let Gino know he walked out, and he asked me to bring him back in. Ron poked his head in the room and said effective immediately he was retiring.
> A Correct.
> Q And when he said he was retiring, how did you, how did you interpret that?
> A Like anyone would when someone retires. Like they're leaving the job for good.
> Q Okay. You state, Again, he said he was done?
> A Correct. (Tr. 732:3-22.)

Tatum testified that at the meeting he was not told that he was being fired or that his employment was being terminated. (Tr. 566:5-10.)

Further, during the interaction, there was no reason for Gino Prestia or Patterson to believe that Tatum was having a health issue. (Tr. 692:20-693:7; 735:16-20.) Specially, according to Patterson, who testified that he also suffers from anxiety (Tr. 739:4-8), there was nothing that he

---

[1] True and accurate copies of the report of proceedings from the trial, except for jury selection, were filed on November 3, 2025 (Dkt Nos. 201-206).

3

observed that made him believe that Tatum was unwell. (Tr. 730:15-731:5; 740:18-741:1.) Patterson testified that at no time was Tatum crying or shaking nor did he appear sick, unwell, or injured. (Tr. 730:15-731:5; 734:23-735:8.) While Patterson testified that it was like Tatum "froze," Patterson testified that he did not mean that Tatum was having a health issue. Instead, Patterson explained that Tatum looked "Like a kid gets caught with their hand in the cookie jar" and "Like I'm busted. Like they know I wasn't doing what I was supposed to be doing or handling that I was supposed to be handling." (Tr. 731:12-22; 740:24-741:1.) After he left the conference room, Tatum packed up his personal belongs and left his key fob on the desk. He then left three (3) hours before his shift was to end.

After leaving, Tatum sent a text message to his supervisor, Jeff Natelborg ("Natelborg") stating: "Tapping out you win." (Tr. 570:17-571:1; D. Ex. 6).[2] Tatum did not text Natelborg that he was ill, that he was leaving work early, or that he was taking a break. (Tr. 572:7-16.) Tatum could have sent a text message conveying that he was not well. Instead, he texted "Tapping out." This on its own is decisive. It is universally understood that "tapping out" means to quit. Natelborg interpreted the text to mean that Taum had quit. (375:3-17.) Similarly, Caitlin Ellis ("Ellis"), 10 Roads' Human Resource Director, interpreted Tatum's text to mean he was "done" and "Tapping out, I'm not going to be here anymore." (Tr. 256:13-23.) Natelborg testified that he spoke to Tatum immediately after Tatum sent the text message. Specifically, Natelborg testified:

> I asked him what had happened. To which he never really gave me any detail or specifics. He just kept saying he was done. I'm done. I'm done. He was definitely worked up. So at one point I told him to calm down before you drive anywhere. I think I told him to have a cigar. And I did ask him if he was quitting. To which he replied, I'm done. I can't do it anymore. (Tr. 376:6-19.)

Natelborg never told Tatum that he was being terminated. (Tr. 377:4-9.)

---

[2] A true and accurate copy of D. Ex. 6 is attached hereto, is marked as Exhibit A, and is incorporated herein by reference.

4

Afterwards, while at the hospital, according to his medical records, Tatum told hospital staff "that all this occurred at work and an interaction with his boss and he handed over his badge." (emphasis added)(P. Ex. 16, p. 164). Further, according to the records, Tatum informed hospital staff that "he was feeling overwhelmed today at work and decided to leave because he was too emotional and jittery (hands shaking)."(emphasis added)(P. Ex. 16, p. 170)[3].

Later that evening, in his email to Natelborg, Tatum stated that "I said I had it." (P. Ex. 7.)[4] Further, in his October 27, 2020 email, Tatum said "Did things get miscommunicated probably so that is common when you panic in a medical situation .after the dust settles common courtesy would be to ask the person if they real meant what they said…" (emphasis added)(P. Ex. 5.)[5] Ellis testified that when she spoke to Tatum on October 27, 2020, he said that he may have said he was retiring, he was "done," and that he was "tapping out." (Tr. 255:23-256:14.)

The evidence does not show that Tatum was discharged. Instead, the overwhelming evidence established that Tatum had resigned on October 24, 2020. This evidence includes: (1) Gino Prestia and Patterson's testimony that Tatum said he was "retiring" and that he was "done;" (2) Tatum packing his belongings; (3) Tatum walking out; (4) Tatum turning in his employment "badge;" (5) Tatum sending a text message to Natelborg, his supervisor, after he walked out stating: "Tapping out you win" (6) Natelborg's testimony that Tatum called him and continually stated "I'm done" in response to Natelborg asking if Tatum was quitting; and (7) HR Director Ellis' testimony that Tatum told her that he may have used the phrases "I'm done," "I'm tapping out,"

---

[3] The relevant portions of Plaintiff's Exhibit 16 are attached hereto, are marked as Exhibit B, and are incorporated herein by reference.
[4] A true and accurate copy of Plaintiff's Exhibit 7 is attached hereto, is marked as Exhibit C, and is incorporated herein by reference.
[5] A true and accurate copy of Plaintiff's Exhibit 5 is attached hereto, is marked as Exhibit D, and is incorporated herein by reference.

and may have said he was "retiring" There is no evidence that anyone ever told Tatum he was fired, or his employment was terminated.

10 Roads' interpretation of Tatum's statements and actions as a resignation was warranted. No reasonable jury could find otherwise, and judgment should be entered in favor of 10 Roads.

### B. Even if Tatum was Discharged, the Discharge Had Nothing to Do With Tatum Going to the Hospital.

10 Roads' interpretation of Tatum's statements and actions as a resignation was reasonable and correct. There is no evidence that anyone ever told Tatum he was fired, or his employment was terminated. Despite this, assuming *arguendo* that Tatum had been terminated, it was not reasonable for the jury to find that 10 Roads was improperly motivated.

This case is akin to *Horton v. Miller Chemical Co.*, 776 F.2d 1351 (7th Cir. 1985). In that case, a jury returned a verdict in favor of the plaintiff for a retaliatory discharge claim under the Act, the district court refused to grant a judgment notwithstanding the verdict ("j.n.o.v."), and the Seventh Circuit reversed the district court's decision. In *Horton*, the plaintiff claimed that he was referred to as "a bad risk" because the company believed that he might seek additional compensation under the Act. *Id.* at 1357. The Seventh Circuit believed this to be "scant" evidence, especially when one considered the other evidence presented. *Id.* The *Horton* Court emphasized there was no evidence presented that any employees said anything to the plaintiff about filing a workers' compensation claim, the defendant did not oppose his pursuit of his rights under the Act, and he was given time off work to receive medical treatment. *Id.* at 1357.

There is no evidence proving that Tatum's employment was terminated because he engaged in conduct protected by the Act. Specifically, there is no evidence Tatum was terminated for going to the hospital after he walked out.

*First*, the timing does not support a finding that 10 Roads intended to retaliate against

6

Tatum. Tatum went to the hospital after he walked out. Prior to walking out, it was not apparent to Patterson (or anyone else) that Tatum had been injured at work. Tatum had 70.47 PTO hours banked. (Tr. 493:15-16.) He could have taken time off if he was not feeling well. (Tr. 565:4-6.) Gino Prestia and Patterson did not even know that Tatum had gone to the hospital until he filed this lawsuit. (Tr. 693:12-19; Tr. 736:6-8.)

*Second*, 10 Roads has its own department devoted to workers' compensation matters. The 10 Roads employees involved had no responsibilities regarding workers' compensation claims. (Tr. 369:10-18.) Gino Prestia (Tr. 694:16-20), Natelborg (Tr. 381:17-382:3), Rico Prestia (Tr. 133:10-20), and Ellis (Tr. 249:20-25) all testified that they do not have any involvement in workers' compensation matters. The fact that Tatum went to the hospital or may have intended file a workers' compensation claim did not factor into any decision-making. (Tr. 146:10-13; 250:5-8; 694:21-696:2.) Tatum presented no evidence to contradict this fact.

*Third*, there was no evidence that anyone said anything negative about Tatum going to the hospital. Gino Prestia and Patterson did not know he even went to the hospital, and it was not Natelborg's understanding that Tatum was for sure going to the hospital. (Tr. 378:25-379:4.) Similarly, there was no evidence that Tatum intended to file a claim, let alone that anyone reacted adversely to a potential claim. At trial, Tatum highlighted Rico Presita's October 26, 2020 email in which he inquired "if he resigned before going to the doctor, I would think that trumps any work comp no?" (P. Ex. 4.) Rico Prestia was clearly asking if 10 Roads had to file a claim on Tatum's behalf because Tatum had resigned. That is how Ellis interpreted the inquiry (Tr. 246:7-20.) Again, Tatum never inquired as to filing a workers' compensation claim or indicated any intention to do so.

*Fourth*, most importantly, 10 Roads had no incentive to terminate Tatum for going to the

7

hospital. Given the nature of its trucking business, it is not unusual for employees of 10 Roads to file claims for workers' compensation benefits. (Tr. 134:18-136:12; 250:9-12.) 10 Roads had an employee whose duties were devoted specifically to handle such claims. Tatum's claim was unlikely to be a large claim. It was unlikely there would be a significant increase in 10 Road's workers' compensation insurance premiums because Tatum went to the hospital for a few hours. (Tr. 153:10-14.) There was no suggestion of potentially extensive follow-up treatment. Tatum was not admitted to the hospital, and he attempted to return to work the following morning on October 25, 2020. He had a MRI and one in-person visit with a physician's assistant on October 30, 2020. (Tr. 755:18-21.) If Tatum was injured at work, and he filed a claim, it would have been covered regardless of his subsequent employment status. It defies logic that 10 Roads fired Tatum in retaliation for going to the hospital or in an attempt avoid a workers' compensation claim.

Apparently, Tatum did not originally believe that the fact that he went to hospital had anything to do with his separation. During his initial visit with Dr. Schultz on January 21, 2020, Tatum told Dr. Schultz that he suspected that he was discharged because he was making too much money. (Tr. 834:16-835:12.) Tatum did not tell Dr. Schultz he suspected he was discharged for going to the hospital.

10 Roads had no incentive to discharge Tatum for going to the hospital after he walked out. 10 Roads would not benefit in any way. Based on the above and foregoing, based on the evidence at trial, it was not reasonable for the jury to find that Tatum was discharged let alone that any discharge was related to the exercise of any right he may have under the Act.

## CONCLUSION

WHEREFORE, based on the above and foregoing, 10 Roads respectfully requests that this Court enter judgment in its favor and for such further and other relief that this Court deems just.

                                                                  10 ROADS EXPRESS,

                              By:   /s/ Joseph K. Nichele
                                          One of Its Attorneys

Momkus LLP
Joseph K. Nichele (jnichele@momkus.com)
Attorneys for Defendants
1001 Warrenville Road, Suite 500
Lisle, IL 60532
(630) 434-0400; Fax: (630) 434-0444

## **CERTIFICATE OF SERVICE**

       I, the undersigned attorney, certify that I served the foregoing **Defendant's Renewed Motion for Judgment as a Matter of Law** on November 3, 2025, and to be filed with the Clerk of the Court pursuant to the Court's ECF/CM electronic filing protocols, that same will thereby be electronically served upon all attorneys of record registered with the Court's ECF/CM system.

By:   /s/ Joseph K. Nichele

Momkus LLP
Joseph K. Nichele (jnichele@momkus.com)
Attorneys for Defendants
1001 Warrenville Road, Suite 500
Lisle, IL 60532
(630) 434-0400; Fax: (630) 434-0444