**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RONALD C. TATUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 21-cv-06732 |
| v. | ) | |
| | ) | |
| 10 ROADS EXPRESS, LLC, | ) | Judge Sharon Johnson Coleman |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

In 2021, Ronald C. Tatum ("Plaintiff") sued 10 Roads Express, LLC, 10 Roads South, LLC, Gino Prestia, and Jeff Natelborg ("Defendants") alleging that he was improperly discharged in violation of the Americans with Disabilities Act of 1990 ("ADA"), Title VII of the Civil Rights Act, and the Age Discrimination in Employment Act ("ADEA"), and that Defendants interfered with his right under the Family and Medical Leave Act ("FMLA") and Illinois Workers' Compensation Act ("IWCA"). Defendants filed a renewed motion for judgment as a matter of law and a motion for a new trial or remittitur under Federal Rules of Civil Procedure 50 and 59, respectively. Plaintiff also filed a motion to alter or amend the judgment entered in his favor against Defendants. For the reasons stated below, the Court denies Defendants' motions, and grants and denies in part Plaintiff's motion.

**BACKGROUND**

On October 25, 2022, Plaintiff filed the operative complaint in this case alleging interference with his FMLA rights, discrimination, and retaliatory discharge. On August 18, 2023, the Court denied Defendants' partial motion to dismiss as to Tatum's Family and Medical Leave Act ("FMLA") claims and Illinois Workers' Compensation Act ("IWCA") retaliation claim. On December 17, 2024 the Court granted and denied in part Defendants' motion for summary judgment, and denied Plaintiff's

motion for summary judgment. The parties proceeded to trial on Plaintiff's IWCA retaliatory discharge claim. The jury returned a verdict in favor of Plaintiff on October 6, 2025 and awarded Plaintiff damages of $350,000 for lost wages and $700,000 for emotional distress.

**DISCUSSION**

**I. Defendant's Renewed Motion for Judgment as a Matter of Law**

*a. Legal Standard*

Rule 50 of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial "if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012) (quoting Fed. R. Civ. P. 50(a), (b)). A motion for judgment as a matter of law may be made any time before the case is submitted to the jury, specifying the judgment sought and the law and facts that entitle the movant to the judgment. Fed. R. Civ. P. 50(a)(2). If the court does not grant a motion made pursuant to Rule 50(a), "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). "No later than 28 days after the entry of judgment … the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." *Id.*

In deciding a Rule 50 motion, the Court construes the evidence in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence. *See Tart v. Illinois Power Co.*, 366 F.3d 461, 464 (7th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150–51 (2000)). The Court does not make credibility determinations nor weigh the evidence, *see Waite v. Board of Trustees of Illinois Comm. College Dist. No. 508*, 408 F.3d 339, 343 (7th Cir. 2005), and "must disregard all evidence favorable to the moving party that the jury [was] not required to believe." *Reeves*, 530 U.S. at 151.

*b. Discussion*

For a workers' compensation retaliatory discharge claim, a plaintiff must show an "employee's discharge causally related to the filing of a claim" under the Illinois Workers' Compensation Act ("Act"). *Eckerty v. E. Ill. Foodbank*, 2022 IL App. (4th) 210537, ¶ 21 (citing *Slover v. Brown*, 140 Ill.App.3d 618, 620-21 (5th Dist. 1986)). Causality may exist where evidence shows a connection between the employee's actions and the employer discharging the employee. *Eckerty*, 2022 IL App (4th) 210537, ¶ 21. The ultimate issue concerning causation is the employer's motive in discharging the employee. *Siekierka v. United Steel Deck, Inc.*, 373 Ill.App.3d 214, 221 (3d Dist. 2007).

Defendants claim that it was not reasonable for the jury to find that Plaintiff was discharged at all, "let alone that he was discharged for engaging in activities protected by the [IWCA]." Instead, Defendants argue that the evidence "overwhelmingly" establishes that Plaintiff resigned from his position before leaving for the hospital. Further, Defendants maintain that even if there was a discharge, a rational jury could not find that Defendants had an improper motivation because the discharge "had nothing to do" with Plaintiff going to the hospital.

Defendants point to evidence that (1) Plaintiff said he was "retiring" and that he was "done"; (2) that he packed up his belongings, turned in his badge, and walked out; (3) that he sent a text message to his supervisor after he left out stating "Tapping out you win" and continually replied "I'm done" when asked if he was quitting; and (4) that Plaintiff told Defendants' Human Resources Director that he may have used the phrases "I'm done," "I'm tapping out," and that he was "retiring." As to motive, Defendants testified that (1) it was not apparent to them that Plaintiff had been injured at work and did not know that he had gone to the hospital; (2) that they were not involved in workers' compensation matters and Plaintiff's action did not factor into any decisions; and (3) that they had no "incentive" to discharge Plaintiff for going to the hospital.

Plaintiff testified that after he left the meeting with his employers, they informed him that they accepted his "resignation." Management then instructed to get his bag and leave. Plaintiff explained that he did not pack up or walk out voluntarily and did not intend to quit. He explained what he meant when he wrote that he was "tapping out," to clarify potential ambiguity for the jury. Further, Plaintiff informed Defendants prior to receiving his termination letter that he did not intend to quit, and that he had experienced a medical event at work and went to the hospital for an anxiety attack. Finally, Plaintiff offered communications in which 10 Roads employees inquired whether it "trumps any work comp" if Plaintiff "resigned before going to the doctor," and that they would ensure that the company's "bases were covered [regarding] not filing a claim unless [Plaintiff] pushes it." Viewing the evidence in a light most favorable to Plaintiff, this evidence allowed the jury to infer Defendants' intent to avoid any requirements as to workers' compensation.

Defendants' motion suggests that the jury was required to credit the employer witnesses' testimony over Plaintiff's, and to draw Defendants' preferred inferences. It is the exclusive role of the jury to weigh the evidence and decide whether the reasons Defendant employers gave for discharging Plaintiff were credible. The jury was not required to disregard Plaintiffs' account in favor of Defendants' interpretations. *See Wipf v. Kowalski*, 519 F.3d 380, 385 (7th Cir. 2008) (finding that where a jury might have "decided the case the opposite way … this does not mean that the verdict was against the manifest weight of the evidence"). Instead, the jury determined that Plaintiff had not resigned and believed that the evidence showed a connection between Plaintiffs' exercise of his rights and Defendants' actions.

The Court cannot reweigh competing inferences nor conclude that Defendants' testimony was decisive, thereby carrying the day against Plaintiff's evidence. The jury's conclusions were not unreasonable such that Defendants are entitled to judgment as a matter of law.

## II. Defendant's Motion for a New Trial, or in the Alternative, Motion for Remittitur

### *a. Legal Standard*

Rule 59 of the Federal Rules of Civil Procedure allows a district court to grant a new trial on all or some of the issues for any reason for which a new trial has been granted in federal court. Fed. R. Civ. P. 59(a)(1)(A). The Seventh Circuit has held that a new trial is appropriate "if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Martinez v. City of Chicago*, 900 F.3d 838, 844 (7th Cir. 2018). A jury verdict "should only be overturned if 'no rational jury' could have rendered it." *Hakim v. Safariland, LLC*, 79 F.4th 861, 868 (7th Cir. 2023); *see also Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012) (quoting *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011)) ("A new trial should be granted, however, 'only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience.'").

### *b. Discussion*

Defendants argue that they are entitled to a new trial because (1) the jury's verdict was against the manifest weight of the evidence; (2) the damages the jury awarded are excessive; and (3) certain rulings by this Court deprived Defendants of a fair trial.

#### i. Manifest Weight of the Evidence

Defendants argue that based on the manifest weight of the evidence, no rational jury could have found in Plaintiff's favor. They reassert the arguments made in their motion for judgment as a matter of law, challenging the sufficiency of the evidence introduced at trial. Defendants argue that no evidence that anyone "told [Plaintiff] that his employment was terminated," and argue that his employers" interpretation of Plaintiff's statements and actions as a resignation was "reasonable and warranted." Additionally, they claim that even if Plaintiff was terminated, a rational jury still could

not find that Defendants were improperly motivated. Plaintiff responds that the evidence is "hotly disputed" and that Defendants' motion relies on "[their] preferred interpretation" of being decisive.

As discussed in its ruling on Defendants' motion for judgment as a matter of law, the Court again finds that the jury's verdict was reasonable in light of the evidence. The jury chose to credit Plaintiff's testimony and draw inferences in his favor, as they were empowered to do.

ii. Excessive Damages

Next, Defendants argue that the jury's award of $1,050,000 in compensatory damages was against the manifest weight of the evidence. Specifically, they claim that the jury's award of $700,000 for emotional distress damages was "excessive and not rational."

Defendants claim that the evidence did not establish that Plaintiff's emotional distress rose to a level that supports the quantum of damages. They argue that there was no evidence to show circumstances such as physical harm or harassment, no testimony that he was prescribed medication, nor evidence that Plaintiff experienced "continuing psychological problems." Defendants also deny that their actions caused any of the psychological harm from Plaintiff's financial conditions, such as his bankruptcy and foreclosure of his house.

Under Illinois law, the amount of damages is a question of fact for the jury. *Richardson v. Chapman,* 175 Ill.2d 98, 113–14, 221 Ill. Dec. 818, 676 N.E.2d 621, 628 (1997). Thus, the Court "takes the evidence in the light most favorable to the jury's verdict." *Adams v. Bd. of Educ. Harvey Sch. Dist. 152*, 2019 WL 3080932, *1 (N.D. Ill. July 15, 2019) (Coleman, J.) (citing *Adams v. City of Chicago*, 798 F.3d 539, 543 (7th Cir. 2015)). An award of damages is "deemed excessive if … it shocks the judicial conscience." *Smart Marketing Group v. Publications Int'l, Ltd.*, 624 F.3d 824, 832 (7th Cir. 2010) (internal citation and quotation marks omitted).

Here, Plaintiff presented evidence of the considerable emotional damage resulting from his termination and from the myriad of financial troubles that followed (such as his bankruptcy and house

foreclosure). Plaintiff, his primary care physician, and his psychologist testified that Plaintiff experienced anxiety attacks, constant stress and worry, and a difficult time completing activities of daily living. He received psychological treatment for his anxiety and depressed mood for nearly a year. Furthermore, Plaintiff submits that the jury's discounted award of $700,000 (as opposed to the $1 million sought by Plaintiff) is proof that jurors were not moved by irrational passion and instead reflects a rational review of the evidence.

Defendants compare the award in this case with those in other cases, but this argument is not dispositive. Illinois courts have "traditionally declined to make … comparisons [with amounts awarded in other cases] in determining whether a particular award is excessive." *Richardson*, 175 Ill.2d at 113–14. The Court must base its analysis on the circumstances of this case alone. Based on a review of the evidence and in deference to the jury's decision, the Court finds that the damages award did not "shock[] the judicial conscience," and that a new trial and remittitur are unnecessary.

iii. Rulings by the Court

Finally, Defendants assert that the Court erred in two particular evidentiary rulings at trial, thereby entitling them to a new trial.

1. *Testimony About Distribution to Rico Prestia*

The Court granted in part Defendants' Motion *in Limine* No. 10, thereby barring Plaintiff from presenting evidence "relating exclusively to punitive damages, including, … Defendant's financial condition, until the Court is satisfied that Plaintiff has made a 'colorable claim' that punitive damages may be warranted." At trial the Court allowed Plaintiff's counsel to ask Rico Prestia, 10 Roads' Chief Operating Officer, about his ownership interest in 10 Roads and a $16 million distribution from the company's retained earnings. Defendants argue that this testimony was "irrelevant, had no probative value to the issues of the case, and violated this Court's Order *in Limine*." Defendants further claim

that the testimony was "particularly prejudicial" because the Court allowed Plaintiff to tell the jury that he filed for bankruptcy and that his house was subject to foreclosure and sold pursuant to a short sale.

Neither Prestia's nor Plaintiff's testimony violated the Court's orders on the motions *in limine*, and their testimony was admissible. Prestia's testimony did not relate "exclusively" to 10 Roads' financial condition, and Plaintiff's counsel asked no questions about the company's finances in connection with the distributions to owners. The questions went to the bias and credibility of Prestia. The testimony also did not bear upon Plaintiff's brief testimony as to his own financial condition, in which he did not provide detail. It was the role of the jury to weigh the length of time between Plaintiff's termination and the foreclosure and bankruptcy against the rest of the evidence. The Court finds that admitting Prestia's testimony is not a basis for a new trial.

*2. Testimony About Plaintiff's Workers' Compensation Filings*

Defendants next argue that they were prejudiced by their inability to question Plaintiff as to his workers' compensation filing. Specifically, they claim that they should have been able to question Plaintiff as to his delay in filing his workers' compensation claim as evidence that he did not think the claim was covered under the IWCA, contradicting his claim that he was injured at work.

In his Motion *in Limine* No. 4, Plaintiff moved to exclude evidence and argument relating to his underlying workers' compensation application. The Court granted the motion, finding that the timing of filing Plaintiff's workers' compensation claim was not relevant to proving his retaliatory discharge claim. The Court reaffirmed that decision at trial. It stands that the timing of filing a worker's compensation claim is not relevant to proving the elements of the retaliatory discharge claim, which requires "exercise of a right granted by the Workers' Compensation Act." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir. 2012). As the Court explained, evidence of timing poses a danger that the jury would misunderstand the elements Plaintiff had to prove.

The Court's ruling on testimony about Plaintiff's workers' compensation application is also not a sufficient basis to grant Defendants a new trial.

Because Defendants have not established that the verdict was against the manifest weight of the evidence, that the damages award was excessive, or that the Court's rulings violated the motions *in limine* order or unfairly prejudiced Defendants, the Court denies their motion for a new trial.

## III. Plaintiff's Motion to Alter or Amend Judgment

### *a. Legal Standard*

A party may move to alter or amend a judgment up to 28 days after entry of the judgment. Fed. R. Civ. P. 59(e). "A motion under Rule 59(e) may be granted only if there has been a manifest error of fact or law, or if there is newly discovered evidence that was not previously available." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). A "manifest error" is a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 642 (7th Cir. 2023) (internal citation omitted).

### *b. Discussion*

#### i. Reinstatement or, in the Alternative, Front Pay

While reinstatement is the "preferred remedy" for victims of improper termination, a court need not reinstate a plaintiff where the result would be "a working relationship fraught with hostility and friction." *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 861 (7th Cir. 2001). Reinstatement is "particularly infeasible" where a plaintiff would no longer enjoy the confidence and respect of his superiors were he reinstated. *Id.* Reinstatement is also problematic where the plaintiff would be supervised by the same individuals who retaliated against him in the first place. *Id.*

The parties agree that reinstatement is not appropriate here. The relevant factors weigh against reinstating Plaintiff to his former position with Defendant, and the relationship between Defendant 10 Roads and Tatum is fraught with hostility. In cases such as this where reinstatement is not

appropriate, the Court may award the prevailing victim of retaliatory discharge "front pay." *Avitia v. Metropolitan Club*, 49 F.3d 1219, 1230-1232 (7th Cir. 1995). The remedy of front pay is designed to put the plaintiff in the identical financial position that he would have been had he been reinstated. *McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 118 (7th Cir. 1986).

Defendants argue that front pay is not authorized by Illinois law in retaliatory discharge cases. However, they cite no supporting authority for the proposition that front pay is only available where provided by statute. Front pay is an equitable remedy that may be awarded at the discretion of the Court. *E.E.O.C. v. Century Broad. Corp.,* 957 F.2d 1446, 1451 (7th Cir. 1992). An award of front pay becomes more speculative and "less appropriate" where a plaintiff has received a substantial liquidated damages award and seeks front pay for a lengthy period of time. *Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1205 (7th Cir. 1989).

The Court finds that Plaintiff's request is unduly speculative. There is insufficient evidence to show that he would have continued working at 10 Roads for five years at the same salary, especially given the uncertainty of 10 Roads' operational conditions. In *Hybert v. Hearst Corp.,* 900 F.2d 1050 (7th Cir. 1990), for example, a district court awarded the plaintiff five years of front pay on the assumption that he would continue working until age 72. *Id.* at 1056. In vacating the award, the Seventh Circuit found that "[n]o record evidence speaks to whether [employees in plaintiff's position] generally work to age 72, nor whether [the plaintiff] in particular could or would have done so" (other than his "professed willingness"). *Id.* Additionally, Plaintiff's award of $1,050,000 in damages also weighs against an additional award of front pay. *See Tomao v. Abbott Lab'ys, Inc.*, 2007 WL 2225905, at *28 (N.D. Ill. July 31, 2007) (Nolan, J.) (finding that award of $235,146.14 in liquidated damages "weigh[ed] against an award of front pay"). Thus, Plaintiff's request for front pay is denied.

ii. Prejudgment Interest

Plaintiff asserts that an award of prejudgment interest is necessary to make him whole because he was "deprived … of wages and other employment benefits" for nearly five years. Illinois law provides that "[i]n all actions brought to recover damages for personal injury … the plaintiff shall recover prejudgment interest on all damages, except punitive damages, sanctions, statutory attorney's fees, and statutory costs, set forth in the judgment." 735 ILCS 5/2-1303(c). The interest is calculated at "the rate of 6% per annum on the amount of the judgment, minus punitive damages, sanctions, statutory attorney's fees, and statutory costs." *Id.* Where the language of a statute is clear, courts have an obligation to apply the statute. *Cotton v. Coccaro*, 236 N.E.3d 517, 537 (Ill. App. Ct. 2023).

Illinois courts have found that where section 2-1303(c) applies, the statute does not provide discretion in awarding prejudgment interest. *See Kroft v. Viper Trans, Inc.*, 2025 IL App (1st) 240220, ¶ 73, 263 N.E.3d 1245, 1269. The statute states that in "all" actions for personal injury, a plaintiff "shall" recover prejudgment interest on "all" damages except those specifically excluded. It provides that prejudgment interest "shall" begin to accrue on the later of the date that the action is filed (December 17, 2021) or the amendment's effective date (July 1, 2021). The use of the word "shall" in these provisions is generally interpreted to mean that the action is mandatory. *Citizens Organizing Project v. Department of Natural Resources*, 189 Ill. 2d 593, 598, 244 Ill.Dec. 896, 727 N.E.2d 195 (2000).

Therefore, because the jury awarded Plaintiff compensatory damages for the tort of retaliatory discharge, Plaintiff is entitled to receive prejudgment interest of approximately $239,745.21.[1]

[1] The Court calculates prejudgment interest by applying the statutory rate of 6% per annum to the principal sum of $1,050,000 for the period from December 17, 2021 and October 6, 2025 (3 years and 294 days).

iii. Tax Component Award

Next, Plaintiff claims that a tax component award is necessary to make him whole, because the award "will bump [him] into a higher tax bracket, causing him to pay more in taxes than he would have if he had not been terminated and received his pay on a gradual basis over several years rather than in a lump sum following a lawsuit." The authorities Plaintiff cites apply to cases brought under Title VII of the Civil Rights Act, and specifically to the remedy of back pay. Although it consists of a monetary award, back pay is considered an equitable remedy. *See Williamson v. Handy Button Machine Co.,* 817 F.2d 1290, 1299 (7th Cir. 1987). The purpose of back pay is to make the employee "whole" with respect to salary, raises, sick leave, vacation pay, pension benefits, etc., absent the retaliatory act. *Clark v. Human Rights Comm'n,* 141 Ill.App.3d 178, 182, 95 Ill.Dec. 556, 490 N.E.2d 29 (1986).

The jury in this case awarded Plaintiff a lump sum of $1,050,000 in compensatory damages, not in back pay. This Court is not aware of any precedent awarding a tax component on lump sums of compensatory damages. While the jury considered Plaintiff's lost wages in addition to his emotional suffering in deciding damages, Plaintiff has not offered sufficient details to estimate a back pay amount, from which the Court could calculate an accurate tax component. *See Rabiu v. Abbott Lab'ys*, 819 F. Supp. at 874 (N.D. Ill. 2026) (Bucklo, J.) (awarding tax component after complete tabulation of back pay award). Plaintiff also offers no support for the assumption that he would have earned $1 million over five years had he not been terminated.[2] Accordingly, the Court declines to award a tax component to Plaintiff's damages award.

iv. Jury Instructions

Finally, Plaintiff asserts that the Court erred in not instructing the jury on the issue of punitive damages, warranting a new trial as to punitive damages. The question of whether punitive damages

[2] At closing arguments, Plaintiff's counsel estimated Plaintiff had lost about $500,000 in wages over the five years after his termination.

can be awarded for a particular cause of action is a matter of law. *Cirrincione v. Johnson*, 184 Ill. 2d 109, 116, 703 N.E.2d 67, 70 (1998) (internal citation omitted). Courts have rejected "the assumption that punitive damages are required in every retaliatory discharge action." *See Dixon Distrib. Co. v. Hanover Ins. Co.*, 161 Ill. 2d 433, 444, 641 N.E.2d 395, 400 (1994). Under Illinois law, punitive damages may be awarded in cases of retaliatory discharge "[u]nder such circumstances, when the facts permit." *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 187, 384 N.E.2d 353, 360 (1978) In some cases, evidence may be "sufficient to support a finding of an employer's [retaliatory discharge] … but not support the level of conduct necessary to sustain an award of punitive damages." *Dixon*, 161 Ill. 2d at 444.

The Court found that Plaintiff had not made a case for including punitive damages. Plaintiff has not cited any newly discovered evidence nor establish any manifest error of law or fact establishing any error. Thus, Plaintiff is not entitled to a new trial on damages based on the Court's decision not to instruct the jury on punitive damages.

**CONCLUSION**

For these reasons, the Court denies Defendants' motion for a new trial and denies Defendants' request for remittitur. [207] The Court also denies Defendants' motion for judgment as a matter of law [209]. The Court grants in part and denies Plaintiff's motion to alter or amend judgment [213] and awards Plaintiff prejudgment interest calculated at the rate of 6% per annum on the amount of the judgment, beginning to accrue on December 17, 2021, totaling approximately $239,745.21.

**IT IS SO ORDERED.**

Date: 8/24/2026

Entered: ______________________________
SHARON JOHNSON COLEMAN
United States District Judge